

Javeyon Hawthorne
jthorne2025@gmail.com
1437 Hi Point St, #6
Los Angeles, CA 90035
213-453-6465
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Javeyon Hawthorne, <br> **Plaintiff(s),** <br> vs. <br> GENERAL MOTORS LLC <br> CULVER CITY AUTO MALL, LLC d/b/a <br> CHEVROLET OF CULVER CITY <br> ORIGENCE LENDING, INC <br> THE GOLDEN 1 CREDIT UNION <br> EXPERIAN INFROMATION SOLUTIONS LLC <br><br> EQUIFAX INFORMATION SERVICES, LLC <br> NEVIN BARATIAN <br> BETH MILLER <br> LORIA MARBLE-STALLWORTH <br> MICHAEL CRY <br> AMBER COSBY <br> CALIFORNIA CREDIT UNION LEAGUE <br> DEFENDANTS 1 THROUGH 50 <br> **Defendants,** | Case No.: CV25-9964-FMO (AGRx) <br><br> Violation of Fair Credit Reporting Act <br><br> Violation of California Consumer Credit Reporting Agencies Act <br><br> Violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(a)–(d)) <br><br> Violations of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) <br><br> Violation California's Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) <br><br><br> **JURY TRIAL DEMANDED** |

1
Complaint

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because

Plaintiff's claims arise under federal statutes, including the Racketeer Influenced

and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968) the Fair Credit

Reporting Act (15 U.S.C. § 1681), and the Truth in Lending Act (15 U.S.C. §

1601).

2.      Venue is proper in the Central District of California under 28 U.S.C. §

1391(b) because a substantial part of the events giving rise to the claims occurred

in this District, including the origination and enforcement of fraudulent loan

contracts, the transmission of false credit data, and the resulting financial,

reputational, and emotional harm suffered by Plaintiff.

3.      The Court has personal jurisdiction over all Defendants because they

purposefully transacted business, directed conduct, and caused injury to Plaintiff

within this District.

4.      Defendant General Motors LLC (GM) is a Delaware limited liability

company with its principal address of business is 300 Renaissance center Detroit,

Michigan. GM designs, manufactures, and distributes motor vehicles and, through

affiliated dealerships, participates in and profits from consumer auto loans.

5.      Defendant Origence Lending, Inc, a California corporation with its principal

place of business at 18400 Von Karman Avenue, Suite 900, Irvine, California

92612. Origence provides loan-origination and credit-application platforms to credit unions and automobile dealerships nationwide.

6.      Defendant Tekion Corp. ("Tekion") is a Delaware corporation with its principal place of business at 5934 Gibraltar Drive, Suite 201, Pleasanton, California 94588. Tekion provides digital retail and management software to automobile dealers and credit unions and, at all relevant times, transmitted Plaintiff's personal identifying information and loan applications.

7.      Defendant Culver City Auto Mall, LLC d/b/a Chevrolet of Culver City is a California limited liability company operating an automobile dealership located at 6101 West Slauson Avenue, Culver City, California 90230, within this District.

8.      Defendant CCC Auto, LLC d/b/a Culver City Chevrolet was a California limited liability company whose franchise operations were succeeded by Culver City Auto Mall, LLC after forfeiture of its business license.

9.      Defendant The Golden 1 ("Golden 1") is a California credit union headquartered at P.O. Box 15966, Sacramento, California 95852-0966, and is engaged in the business of extending credit and reporting consumer information to national credit bureaus.

10.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized and existing under the laws of the State of Ohio, with its

principal place of business located at 475 Anton Boulevard, Costa Mesa,
California 92626.

11.    Defendant TransUnion ("TransUnion") is a limited liability company
organized under the laws of the State of Delaware, with its principal place of
business located at 555 West Adams Street, Chicago, Illinois 60661.

12.    Defendant Equifax Information Services, LLC ("Equifax") is a limited
liability company organized under the laws of the State of Georgia, with its
principal place of business located at 1550 Peachtree Street N.W., Atlanta,
Georgia 30309.

13.    Defendant California Credit Union League ("CCUL") is a California
nonprofit corporation with its principal place of business at 2855 East Guasti
Road, Suite 202, Ontario, California 91761. CCUL is an association representing
credit unions across California and Nevada and, at all relevant times, collaborated
with Origence, Inc. and Golden 1 Credit Union in the administration, networking,
and regulatory coordination of credit-union lending operations.

14.    Defendant Nevin Baratian is, on information and belief, the Principal Dealer
of Chevrolet of Culver City and, at all relevant times, directed, approved, and
ratified the unlawful acts described in this Complaint.

15.    Defendant Beth Miller is on information and belief the Vice President of
Credit Reporting and Member Care at The Defendant Golden 1 and, at all relevant

times, approved, authorized, and disseminated materially false information concerning Plaintiff's accounts to national credit bureaus.

16.     Defendant Loria Marble-Stallworth is on information and belief, the Loss Mitigation and Member Care Agent for The Defendant Golden 1 and, at all relevant times, participated in fabricating and transmitting fraudulent modification agreements used to further the Enterprise.

17.     Loria acted in her capacity as an officer, employee, and agent of Golden 1, and participated in the Enterprise's fraudulent scheme by reviewing, concealing, and responding to Plaintiff's complaints with materially false statements intended to mislead Plaintiff and obstruct discovery of the unlawful conduct.

18.     Defendant Michael Cry is, on information and belief, the Centralized Complaint Analyst within the Enterprise Member Experience Department at The Defendant Golden 1, headquartered in Sacramento, California. At all relevant times, Cry acted in his capacity as an officer, employee, and agent of Golden 1, and participated in the Enterprise's fraudulent scheme by reviewing, concealing, and responding to Plaintiff's complaints with materially false statements intended to mislead Plaintiff and obstruct discovery of the unlawful conduct.

19.     Defendant Amber Cosby is an individual employed by The Golden 1 Credit Union, acting as a Loss Mitigation Specialist in the Member Care Department. At all relevant times, she was an agent and representative of Golden 1, acting within

the scope of her employment and authority in communications and decisions regarding Plaintiff's loan account and related disputes.

## INTRODUCTION

### *Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information Systems (18 U.S.C. § 1028)*

20.    This action arises from Defendants' knowing and willful transmission of Plaintiff's personal identifiers to open unauthorized financial accounts, falsify membership applications, and disseminate inaccurate credit data through national consumer reporting systems.

21.    In doing so, Defendants engaged in racketeering activity, including mail fraud, wire fraud, bank fraud, interstate transportation and receipt of stolen or fraudulently obtained property, money laundering, and related financial crimes in violation of 18 U.S.C. §§ 1341, 1343, 1344, 1956, 1957, 2314, 2315, 891, and 1546. Defendants further engaged in fraud involving identification documents and authentication features in violation of 18 U.S.C. § 1028, and willful violations of federal credit reporting laws.

22.    Defendants General Motors LLC, Tekion, The Golden 1 Credit Union, Origence Lending, Inc., and Chevrolet of Culver City acted jointly and knowingly

to create an unauthorized savings account, fabricate an automobile loan, and transmit forged applications and identifiers through interstate electronic systems.

23.    These acts constitute a pattern of racketeering activity as defined under 18 U.S.C. §§ 1961(1) and 1961(5), and violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a)–(d).

24.    Defendants Experian, Equifax, and Transunion published and republished the fraudulent loan and associated data despite receiving Plaintiff's written identity-theft reports, FTC affidavits, and police documentation, in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b) and 1681i(a).

25.    By profiting from fraudulent loans and the continued dissemination of false credit data, Defendants also engaged in unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

26.    Collectively, Defendants operated as an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), sharing a common purpose of originating, transmitting, and enforcing fraudulent loans and financial instruments for economic gain across state lines.

27.    The enterprise's conduct directly and proximately harmed Plaintiff by damaging his personal and business creditworthiness, impairing business operations, and causing emotional and financial distress. Plaintiff seeks statutory,

actual, and punitive damages, as well as injunctive and equitable relief, to redress the injuries.

28.    The following factual allegations detail the formation, execution, and concealment of the racketeering enterprise, illustrating how each Defendant— acting individually and in concert—used interstate mail and wire communications to transmit forged documents, falsify financial records, and maintain the appearance of lawful transactions. These acts collectively form the predicate offenses supporting Plaintiff's claims under 18 U.S.C. §§ 1962(a)–(d) and demonstrate the enterprise's ongoing impact on interstate commerce.

## STATEMENENT OF FACTS

### 2023 racketeering activities

29.    On September 13, 2023, Plaintiff Javeyon Hawthorne visited Defendant Chevrolet of Culver City, located at 6101 West Slauson Avenue, Culver City, California 90230, for the purpose of purchasing a vehicle to support his business operations as a 24-year-old entrepreneur.

30.    Plaintiff provided his valid driver's license and other identifying information directly to dealership personnel prior to the completion of any credit documentation.

31.    The Sales Manager for Defendant Chevrolet of Culver City (CCC Auto LLC), David Albanez, knowingly and willfully entered false and inaccurate information into Plaintiff's credit application, including misstatements regarding Plaintiff's identification, income, and financial standing.

32.    The Finance Manager for Defendant Chevrolet of Culver City (CCC Auto LLC), Jose Carlos Amorino, knowingly participated in the preparation submission of the falsified credit application, acting in concert with actor Albanez to process and transmit Plaintiff's information to prospective lenders for approval.

33.    Each acted within the course and scope of employment and under the authority of Defendants Chevrolet of Culver City (CCC Auto LLC) and Baratian.

34.    Acting upon the falsified application, Defendant Albanez transmitted Plaintiff's personal and financial information through interstate electronic channels for credit approval, initiating the first wire communication in furtherance of the fraudulent scheme. This act marked the beginning of the enterprise's coordinated effort to obtain financing under false pretenses and laid the groundwork for subsequent transmissions through RouteOne, Tekion, and Origence, each constituting predicate acts of wire fraud under 18 U.S.C. § 1343.

### Interstate Transmission Through RouteOne

35.   Defendant Chevrolet of Culver City (CCC Auto LLC), Agent Albanez thereafter electronically transmitted the falsified credit application via interstate wire communication through RouteOne, LLC, located at 31500 Northwestern Highway, Suite 300, Farmington Hills, Michigan 48334, to General Motors Financial Company, Inc., located at 801 Cherry Street, Suite 3600, Fort Worth, Texas 76102.

36.   The transmission was made with the intent to obtain credit under false pretenses and constituted an unlawful attempt to defraud General Motors Financial Company, Inc.

37.   Although General Motors Financial Company, Inc. ultimately denied the application, the fraudulent interstate transmission and use of Plaintiff's personal data had already been completed, thereby satisfying the elements of wire fraud under 18 U.S.C. § 1343.

38.   This initial interstate transmission through RouteOne established the technological and financial infrastructure later used by Defendants Tekion, Origence, and Golden 1 to perpetuate the fraudulent loan scheme. By sending Plaintiff's falsified application across state lines to obtain credit under false pretenses, Defendants initiated the first act in a continuing pattern of racketeering

activity that would evolve into the creation of a forged Retail Installment Sales

Contract and a fabricated loan account, directly causing Plaintiff's financial and

reputational harm.

## Subsequent Transmission Through Tekion and Origence

39.    Following that denial, agent Amorino, acting on behalf of Defendant

Chevrolet of Culver City (CCC Auto LLC), intentionally and without Plaintiff's

knowledge or consent, retransmitted Plaintiff's personal and financial information

through Defendant Tekion's dealer-management platform.

40.    Defendant Tekion's system, integrated with Defendant Origence, Inc.,

automatically routed Plaintiff's data through Origence's Credit Union Direct

Lending ("CUDL") network for the purpose of soliciting financing from

participating credit unions.

41.    The CUDL network comprises more than 1,100 federally insured credit

unions throughout the United States and forms a nationwide data-sharing and

lending infrastructure used to evaluate, approve, and originate consumer loans.

42.    Through this routing, Plaintiff's falsified credit application and identifying

information were electronically transmitted across state lines to multiple credit

unions for underwriting consideration, thereby facilitating interstate wire

transmissions in furtherance of the racketeering enterprise and expanding the scope

of the unlawful activity beyond the State of California.

43.     These unauthorized and interstate transmissions of Plaintiff's personal and

financial data enabled Defendants to initiate fraudulent membership and loan-

application processes with out-of-state institutions. This act established the

interstate nexus of the racketeering enterprise, demonstrating how Defendants

jointly used Tekion's and Origence's digital networks to transmit forged

information and solicit financing under false pretenses in violation of 18 U.S.C. §

1343.

**Retrieval by Defendant Golden 1 and Creation of Fraudulent Membership**

44.     Later that same day, Defendant Golden 1, with its principal office located at

8945 Cal Center Drive, Sacramento, California 95826, retrieved Plaintiff's

personal identifiers transmitted through the CUDL network via interstate electronic

communications.

45.     Following this unauthorized retrieval, Defendants Chevrolet of Culver City

(CCC Auto LLC), Tekion, Origence, Inc., and Golden 1 jointly prepared and

transmitted a fraudulent membership application purporting to belong to Plaintiff.

46.    The document was a revised version of a 2011 Golden 1 membership form
that omitted Golden 1's official logo, contained a forged signature, an incorrect
driver's license number, and a fabricated mother's maiden name.

47.    These alterations were made intentionally to fabricate the appearance of
lawful consent and to enable the unauthorized creation of a membership profile
within Defendant Golden 1's internal systems.

48.    The creation and electronic transmission of this falsified membership
application established the initial mechanism through which Defendants gained
unauthorized access to Plaintiff's personal and financial data. This act laid the
structural groundwork for the ensuing racketeering activity by enabling Defendants
to fabricate a Golden 1 account, process forged loan documents, and transmit false
data through interstate networks—conduct that constituted predicate acts of wire
fraud under 18 U.S.C. § 1343 and identification-document fraud under 18 U.S.C. §
1028.

**Fraudulent Account Opening and Rejection of Original Contract**

49.    Shortly thereafter, Defendant Golden 1 fraudulently opened a savings
account in Plaintiff's name funded by a one-dollar deposit, thereby creating the
false appearance of legitimate credit-union membership and loan eligibility.

50.     This deceptive act laid the foundation for processing a subsequent unauthorized automobile loan account tied to the fabricated membership.

51.     After establishing the fraudulent membership profile, Defendant Golden 1 electronically rejected the Retail Installment Sales Contract ("RISC") that had been transmitted earlier that day through defendants Origence CUDL network.

52.     This action voided the legitimate transaction while allowing Defendant Golden 1 to retain and continue using Plaintiff's personal and financial information for the purpose of unauthorized loan origination, money transfers, and credit reporting activities.

53.     These initial acts of identity misuse and data manipulation set in motion the broader racketeering scheme, enabling Defendants to fabricate credit-union membership credentials, manipulate loan applications, and prepare the groundwork for the forged Retail Installment Sales Contract executed later that same day. Through this coordinated deception, Defendants established the infrastructure for ongoing mail and wire fraud affecting interstate commerce.

**Delivery of Vehicle Under False Pretenses**

54.     At approximately 12:21 p.m. on September 13, 2023, at 6101 West Slauson Avenue, Culver City, California 90230, Plaintiff executed a Retail Installment

Sales Contract (Contract No. 252895) for the purchase of a 2023 Chevrolet
Corvette.

55.     The agreement, subject to the Federal Truth-in-Lending Act, disclosed an
annual percentage rate of 7.84%, a total finance charge of $24,670.71, and an
amount financed of $90,378.09.

56.     The total sales price on credit, including Plaintiff's $9,000 down payment,
was $124,048.80. Plaintiff's payment schedule consisted of 71 monthly payments
of $1,597.90 beginning December 12, 2023.

57.     Relying on Defendants' representations that Plaintiff's credit application had
been approved and that the financing was validly secured, Plaintiff accepted
delivery of the 2023 Chevrolet Corvette that same afternoon and drove the vehicle
home in good faith belief that the transaction was legitimate.

58.     In reliance on these representations, Plaintiff entered the transaction
believing the Retail Installment Sales Contract to be valid and enforceable.
Unbeknownst to Plaintiff, Defendants had already begun a coordinated effort to
void the original contract, forge replacement documents, and transmit falsified loan
data through interstate systems—acts that would later form the basis of the
enterprise's continuing pattern of racketeering activity.

## Forged Contract and Loan Funding

59.    On September 15, 2023, Defendant Jose Carlos Amorino, acting under the direction of Defendants Chevrolet of Culver City (CCC Auto LLC) and Principal Dealer Nevin Baratian, generated a new Retail Installment Sales Contract bearing a different contract number and altered Truth-in-Lending disclosures.

60.    The substituted document contained extensive fraudulent entries throughout its twenty-eight pages, including falsified payment terms, misrepresented financial figures, and forged signatures.

61.    The falsified contract also incorporated forged Department of Motor Vehicles registration and title forms, further evidencing a deliberate and systematic attempt to conceal the fraud and legitimize an otherwise void transaction.

62.    The forgery was executed on dealership premises and uploaded through Defendant Tekion's Automotive Retail Cloud, located at 5934 Gibraltar Dr, suite 201 Pleasanton, California 94588, for transmission to Defendant Origence.

63.    On September 18, 2023, Defendant Origence relayed the forged RISC and supporting documents to Defendant Golden 1 for funding.

64.    Using proceeds from the earlier September 13 transaction, Defendant Golden 1 funded an unauthorized automobile loan in the principal amount of $90,378.09, allocating the proceeds to Defendant Chevrolet of Culver City for the

purchase of a 2023 Chevrolet Corvette, Plaintiff never signed or consented to any

retail installment contract or financing agreement.

65.    The loan documents were transmitted through interstate electronic systems

maintained by Defendants Tekion and Origence and finalized within Defendant

Golden 1's internal loan-servicing database located in Sacramento, California. This

multistep process constituted acts of wire fraud in violation of 18 U.S.C. § 1343

and bank fraud in violation of 18 U.S.C. § 1344.

66.    The creation and interstate transmission of the forged September 15, 2023

contract established the foundation of the racketeering enterprise, enabling

Defendants to fabricate a loan, extract funds, and transmit false data across

multiple state lines. As a direct and foreseeable result, Plaintiff suffered financial

loss, reputational damage, and business-credit impairment, all traceable to

Defendants' coordinated use of interstate wire systems to execute and conceal the

fraudulent transaction.

**2023 Wire fraud, False Credit Reporting and Continuing Concealment**

67.    On September 25, 2023, and continuing through October 16, 2025,

Defendant Golden 1 knowingly utilized the Metro 2® credit-reporting format to

transmit false information to Defendants Experian Information Solutions, Inc., ,

and Equifax Information Services, LLC.

68.     Defendant Golden 1 falsely reported that Plaintiff had opened an automobile-loan account on September 13, 2023, in the amount of $90,379, and included a fabricated payment history reflecting alleged payment activity.

69.     In truth, Plaintiff never authorized or executed any valid agreement with Defendant Golden 1 on September 13, 2023, for $90,379.

70.     Plaintiff's bank statements further show that the purported loan was not opened on September 13, 2023, contradicting Defendant Golden 1's reported dates and proving that the account was entirely falsified.

71.     Defendant's conflicting account dates and fabricated payment history were designed to mislead credit bureaus and financial institutions into believing that Plaintiff had consented to, received, and serviced the alleged loan, thereby concealing the unauthorized nature of the transaction.

72.     On or about November 1, 2023, an agent of Defendant Golden 1 telephoned Plaintiff at his personal number ending in [2969] and falsely represented that Plaintiff was four days delinquent on the purported auto loan.

73.     The agent threatened that unless immediate payment was made, a late fee would be assessed and the delinquency reported to the national credit bureaus. Relying on that false representation and unaware of the fraudulent nature of the account, Plaintiff initiated an electronic payment that same day.

74.     These false Metro 2 transmissions and deceptive collection calls marked the beginning of a sustained pattern of racketeering activity, using interstate communications to legitimize an unauthorized debt and extract funds through coercion and misinformation. The resulting injury—financial loss, impaired credit standing, and reputational damage—was the direct and foreseeable consequence of Defendants' coordinated efforts to fabricate and maintain the appearance of a lawful loan obligation.

## Continuing Injury and Pattern of Racketeering

75.     Believing the account to be genuine, Plaintiff continued to make recurring electronic payments to Defendant Golden 1 through interstate communications from November 2023 through October 14, 2025, suffering financial loss and damage to his personal and business credit as a direct and proximate result of Defendants' fraudulent scheme.

76.     Each Defendant acted knowingly and willfully with the intent to obtain money, property, and credit-union privileges through false pretenses, thereby furthering a continuing pattern of racketeering activity as defined under 18 U.S.C. § 1961(1) and prohibited by 18 U.S.C. § 1962(c).

77.     At no point did any Defendant notify Plaintiff of the fraudulent membership, the $1.00 deposit, or the $90,378.09 unauthorized loan.

78.     The deliberate concealment of these acts, coupled with the continued false credit reporting and collection efforts, constitutes ongoing racketeering activity demonstrating both closed-ended and open-ended continuity within the meaning of the RICO statute.

79.     Believing the account to be genuine, Plaintiff continued to make recurring electronic payments to Defendant Golden 1 through interstate communications from November 2023 through October 14, 2025, suffering financial loss and damage to his personal and business credit as a direct and proximate result of Defendants' fraudulent scheme.

80.     Each Defendant acted knowingly and willfully with the intent to obtain money, property, and credit-union privileges through false pretenses, thereby furthering a continuing pattern of racketeering activity as defined under 18 U.S.C. § 1961(1) and prohibited by 18 U.S.C. § 1962(c).

81.     At no point did any Defendant notify Plaintiff of the fraudulent membership, the $1.00 deposit, or the $90,378.09 unauthorized loan.

82.     The deliberate concealment of these acts, coupled with the continued false credit reporting and collection efforts, constitutes ongoing racketeering activity demonstrating both closed-ended and open-ended continuity within the meaning of the RICO statute.

## 2024 MAIL FRUAD DEFENDANT GOLDEN 1

83.    On May 20, 2024, Defendant Golden 1 engaged in a scheme to defraud plaintiff by use of U.S. mail in the furtherance of the scheme to defraud plaintiff.

84.    The mailing was sent from P.O. Box 15966, Sacramento, California 95852-0966, mailed a letter titled "Request for Payment" to Plaintiff 1201 South Hope Street, Apartment 3310, Los Angeles, California 90015, the scheme involved material misstatements and omissions which resulted in loss of honest service.

85.    The letter referenced Account No. 3818, demanded payment of $1,582.65, and threatened to report Plaintiff to credit bureaus if payment was not made, this constituted a knowing and willful use of the United States mail to collect a debt defendant knew to be fraudulent, in violation of 18 U.S.C. § 1341 (Mail Fraud)

86.    On June 20, 2024, Defendant mailed a second "Request for Payment" to Plaintiff's address, again demanding $1,582.65 and threatening adverse credit reporting.

87.    The correspondence repeated false delinquency claims that Defendant knew to be baseless and omitted the material fact that the September 13, 2023, Retail Installment Sales Contract had been voided. As a result, Plaintiff suffered injury including the loss of money, property, and honest services. This mailing furthered Defendant's ongoing fraudulent debt-collection scheme in violation of 18 U.S.C. §

1341. These consecutive "Request for Payment" letters formed a calculated pattern of deceit, designed to coerce payment on a void contract and sustain the appearance of a lawful debt. Each mailing amplified the injury to Plaintiff's business and property by damaging credit reputation, obstructing access to financing, and prolonging financial distress—all foreseeable results of Defendant's willful misuse of the U.S. Mail in furtherance of the racketeering enterprise.

88.    On July 20, 2024, Defendant mailed a third "Request for Payment," identical in form and substance to the prior letters, continuing the false narrative of default and threatening repossession, in violation of § 1341.

### 2024 WIRE FRAUD DEFENDANT GOLDEN 1

89.    On August 1, 2024, Defendant electronically transmitted false credit information through interstate wire to defendants Experian, TransUnion and Equifax, falsely reporting Plaintiff as "30 days past due" on the fraudulent auto loan, this act constituted wire fraud under 18 U.S.C. § 1343 and a willful violation of 15 U.S.C. § 1681s-2(a).

90.    On August 29, 2024, Experian, relying on Defendant Golden 1 false data, issued "Reinvestigation Results" upgrading the account to a "60-day late payment", the reinvestigation report was false and caused immediate credit-score damage, reputational harm, and multiple business-credit denials.

91.     On or about September 1, 2024, Defendant, acting knowingly and with

intent to deceive, erased the 60-day late entry and furnished new Metro 2 data

falsely showing that Plaintiff made a timely August payment. Immediately

thereafter, Defendant re-reported the same account as "30 days past due." This

manipulation concealed prior falsifications and constituted a separate act of wire

fraud under § 1343.

92.     These successive transmissions reflect a deliberate pattern of falsifying,

erasing, and re-reporting loan data to fabricate a history of delinquency while

concealing the underlying fraud. The shifting reports directly undermined

Plaintiff's credit standing, triggering denials of financing and business

opportunities, and extending the duration of the enterprise's fraudulent scheme

through continuous interstate data transmissions.

## 2024 MAIL FRAUD DEFENDANT GOLDEN 1

93.     On October 8, 2024, Defendant, through its Loss Mitigation Department,

mailed to Plaintiff a letter titled "Trial Period Payment Offer / Consumer Loan

Modification," referencing Loan No. 3818-L-1, demanding three payments of

$1,027.69 and warning of repossession.

94.    The letter omitted material facts namely, that the underlying Retail Installment Sales Contract had been fraudulently generated and transmitted without Plaintiff's consent and therefore constituted mail fraud under § 1341.

95.    Each of the foregoing acts—identified by date, sender, recipient, content, and method of transmission—constitutes a distinct predicate act of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

96.    Taken together, they form a continuous pattern of racketeering activity committed knowingly, intentionally, and with reckless disregard for the truth. The conduct demonstrates both closed-ended continuity, spanning more than twelve consecutive months, and open-ended continuity through the ongoing threat of continued fraudulent reporting, in violation of 18 U.S.C. § 1962(c).

97.    These coordinated mailings and electronic transmissions were not isolated incidents but components of a unified strategy to preserve the illusion of a valid debt, extract payments, and conceal the forged September 13, 2023 contract. As a direct and foreseeable result, Plaintiff suffered measurable financial losses, damage to business credit, and prolonged reputational injury, all of which further demonstrate the enterprise's ongoing pattern of racketeering activity affecting interstate commerce.

## 2024 RACKERTEERING ACTIVITES

## WIRE FRAUD DEFENDANT AMBER COSBY

98.    On January 17, 2025, Defendant Golden 1, P.O. Box 15966, Sacramento, California 95852-0966, Defendant Amber Crosby under the supervision of Defendant Loria Marble-Stallworth, transmitted to Plaintiff an email titled "Loan Modification Approval.

99.    The email, sent via interstate electronic communication from Sacramento to Plaintiff's address at 1437 Hi Point Street, Apartment 6, Los Angeles, California 90035, marked the box for "Consumer Loan Modification (Approved)".

100.    The January 13 communication was made knowingly, willfully, and intentionally to create the false appearance of an enforceable loan obligation and to launder the fraudulent loan through an artificial approval process, thereby extending the duration and continuity of the racketeering scheme.

101.    Defendant Golden 1 failed to disclose that the original September 13, 2023, contract had been voided by the originating dealership and replaced with fabricated documentation prepared without Plaintiff's knowledge or consent.

102.    This fraudulent email and its concealed omissions directly advanced the enterprise's scheme by legitimizing a void loan and inducing Plaintiff to rely on its false approval status. As a result, Plaintiff suffered continuing financial and

reputational harm, including reliance on an illegitimate obligation, loss of access to

lawful credit, and obstruction of business operations—all proximately caused by

Defendants' willful use of interstate wire communications in violation of 18 U.S.C.

§ 1343.

**WIRE FRAUD DEFENDANT LORIA MARBLE-STALLWORTH**

103.    On August 4, 2025, at approximately 5:18 p.m. PST, Defendant Loria

Marble-Stallworth, acting in her official capacity as Manager of Loss Mitigation at

The Golden 1 Credit Union, transmitted an email from her Golden 1 business

address, lossmitigation@golden1.com, to Plaintiff email thornejay26@gmail.com

with the subject line *"Streamline Document."* The email included a digital

attachment titled *loan mod agreement.*

104.    The attached correspondence included a purported "Consumer Loan

Modification Agreement" dated January 13, 2025, referencing loan number

****3818-1 and listing a 2023 Chevrolet Corvette as collateral. The mailing was

transmitted through the United States Postal Service. The document falsely

represented that Plaintiff's account had been validly modified to reduce the interest

rate to 5.84%, extend the loan term by thirty-three (33) months, and establish a

new monthly payment of $1,024.06 due on or before February 25, 2025. The

agreement bore the signature of Defendant Loria Marble-Stallworth and was

intended to give the appearance of a legitimate modification to an otherwise void
and unauthorized loan.

105.    Plaintiff reasonably and detrimentally relied on the authenticity of this
communication and its contents, believing it referenced a valid and enforceable
Retail Installment Sales Contract executed on September 13, 2023, at 6101 West
Slauson Avenue, Culver City, California 90230. Plaintiff had been expressly
informed at the dealership that his credit had been approved, and, in reliance on
that representation, took delivery of the 2023 Chevrolet Corvette and structured
business obligations around the expectation of a legitimate loan relationship.

106.    Defendant Marble-Stallworth knowingly and willfully transmitted the
fraudulent modification package and maintained its appearance of legitimacy in
defendant Golden 1's system records, materially omitting that the base contract
was null.

107.    These intentional misstatements and omissions were material and made for
the purpose of deceiving Plaintiff, sustaining the illusion of a lawful obligation,
and perpetuating the financial enterprise's ongoing pattern of fraud.

108.    By transmitting the falsified modification documents and related
correspondence through email and internal data servers, Defendant used and
caused the use of interstate wire communications in furtherance of a scheme to

defraud Plaintiff of money, property, and honest services, in violation of 18 U.S.C. § 1343.

109.    As a direct and proximate result, Plaintiff suffered quantifiable injury, including loss of business credit, inability to secure vehicle or property financing, delay and obstruction of business expansion, and reputational harm affecting commercial operations and investor relations.

110.    These dual communications were made knowingly and intentionally to intimidate Plaintiff, fabricate delinquency, and legitimize a debt that never lawfully existed, constituting predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

111.    Defendant Marble-Stallworth's coordinated use of both electronic and postal communications to circulate falsified modification materials perpetuated the illusion of a lawful debt and extended the enterprise's fraudulent reach across state lines. Her actions foreseeably caused Plaintiff continued financial loss, reputational damage, and business disruption by embedding false loan data within interstate credit-reporting systems and obstructing the discovery of the voided contract.

## MAIL FRUAD DEFENDANT BETH MILLER

112.    Defendant Beth Miller, acting in her capacity as Vice President of Member Care and Credit Reporting Oversight for Golden 1 Credit Union, engaged in a

deliberate scheme to defraud by concealing the fact that the Retail Installment Sales Contract ("RISC") executed on September 13, 2023, had been voided.

113.    The omissions and misstatements within the packet were material because they were designed to cause Plaintiff to believe a lawful debt obligation remained outstanding. The false presentation of the account's validity was intended to induce reliance and discourage Plaintiff from pursuing legal and administrative remedies.

114.    The scheme resulted, and was intended to result, in the loss of Plaintiff's money, property, and honest services—manifested through business-credit denials, damaged financial reputation, and interference with ongoing business operations that relied on accurate credit standing.

115.    Defendant Miller's deliberate concealment of the voided September 13, 2023 contract, and her transmission of fraudulent correspondence through the U.S. Mail, constituted an essential step in maintaining and prolonging the racketeering enterprise's unlawful revenue stream.

116.    By knowingly using the mail to distribute false and misleading materials in furtherance of this scheme, Defendant Miller violated 18 U.S.C. § 1341. Her actions directly and proximately caused Plaintiff's financial and reputational injuries and deprived Plaintiff of the honest services owed by a fiduciary credit institution. This fraudulent email misrepresented the existence of a valid and enforceable loan obligation, causing Plaintiff to rely on the false appearance of

legitimacy and continue structuring payments and business plans around a void contract. As a result, Plaintiff suffered financial loss, damaged creditworthiness, and disruption of business expansion directly attributable to Defendant's deceptive use of interstate wire communications.

117.    Defendant Beth Miller's coordinated use of interstate mail and electronic communications to conceal the voided contract and sustain the illusion of lawful indebtedness directly advanced the enterprise's fraudulent objectives. Her conduct caused foreseeable and continuing injury to Plaintiff's business credit, property, and reputation by enabling the circulation of false financial data across state lines and prolonging the racketeering enterprise's unlawful profit scheme.

## WIRE FRAUD MICHAEL CRY

118.    On August 27, 2025, at approximately 5:00 p.m., Defendant Michael Cry, acting in his official capacity as Centralized Complaints Analyst for The Golden 1 Credit Union, transmitted an electronic email from michael.cry@golden1.com to Plaintiff at 1437 Hi Point Street, Apt 6, Los Angeles, CA 90035.

119.    The email stated that Golden 1's "Consumer Loan Servicing Department" had sent Plaintiff "the valid loan contract with the October 28 first payment due date," and that the "December 12 contract" was voided due to a "dealership processing error."

120.    These statements were materially false and misleading. At the time of

transmission, Defendant Cry knew that no valid October 28 contract existed, and

that the December 12 contract was the only authentic agreement executed by

Plaintiff.

121.    Defendant Cry sent the message for the purpose of concealing the creation

of a falsified Retail Installment Sales Contract ("RISC") and to induce Plaintiff to

accept the legitimacy of a forged loan account.

122.    The email was transmitted via interstate wires through Golden 1's electronic

communication network and third-party email servers located outside the State of

California, thereby satisfying the use of interstate wire communications in

furtherance of the fraudulent scheme.

123.    The misrepresentations were material because they influenced Plaintiff's

understanding of his financial obligations, delayed discovery of the forged

documents, and perpetuated the appearance of lawful debt under a void contract.

124.    Defendant Cry's conduct constitutes a scheme to defraud within the meaning

of 18 U.S.C. § 1343, undertaken willfully and with intent to obtain money and

property by false pretenses, and to deprive Plaintiff of honest services through

deceit.

125.    As a direct and proximate result of the wire communication and its false

assertions, Plaintiff suffered loss of money, property, and honest services, and was

further injured by the continuation of fraudulent reporting to Experian,

TransUnion, and Equifax.

126.    This fraudulent email further entrenched the illusion of a legitimate debt,

prompting Plaintiff to expend additional time and resources responding to false

account information and damaging credit reports. The deception directly

obstructed Plaintiff's ability to dispute the forged contract in a timely manner,

prolonging financial harm, impairing access to business credit, and compounding

reputational and economic injuries traceable to Defendant Cry's unlawful use of

interstate wire communications.

## MAIL FRUAD MICHAEL CRY

127.    Defendant Michael Cry, acting as Centralized Complaints Analyst within

Golden 1's Enterprise Member Experience Department, knowingly participated in

a scheme to defraud Plaintiff by concealing the voided status of the September 13,

2023, Retail Installment Sales Contract ("RISC") and fabricating a "replacement

signed contract" narrative.

128.    On or about August 27, 2025, Defendant Cry prepared and caused to be

mailed from Golden 1's Sacramento headquarters an official letter printed on

Golden 1 letterhead, bearing his signature, and addressed to Plaintiff at 1437 Hi

Point Street, Apartment 6, Los Angeles, California 90035.

129.   The letter falsely represented that prior discrepancies were the result of a

"processing error" and asserted that a valid, executed replacement contract existed.

It further claimed that Golden 1 had "notified all credit bureaus on July 31, 2025,

to ensure accuracy," despite the continued reporting of false and misleading data

that sustained the appearance of a legitimate obligation.

130.   The letter's closing statement "We consider this matter closed" was a

knowing falsehood intended to deter Plaintiff from further challenging the

fraudulent account, obstruct regulatory review, and perpetuate the illusion of

compliance.

131.   Defendant Cry's deliberate use of the U.S. Mail to transmit materially false

statements and omissions was essential to the execution and concealment of the

racketeering enterprise's ongoing fraudulent scheme.

132.   Each misrepresentation was material, intended to induce reliance, and

calculated to maintain Golden 1's unlawful collection efforts under a contract

known to be void.

133.   Defendant Cry's conduct satisfies all elements of 18 U.S.C. § 1341—

engaging in a scheme to defraud, making material misstatements and omissions,

causing the use of the U.S. Mail in furtherance of the scheme, and resulting in

Plaintiff's loss of money, property, and honest services.

134.    This mailing perpetuated the false appearance of a valid loan, causing

Plaintiff to forgo other financing opportunities and continue defending against

illegitimate collection activity. The deception directly impaired Plaintiff's credit

reputation, delayed correction of false tradelines, and inflicted measurable financial

and business losses stemming from reliance on the fraudulent representations

contained in Defendant Cry's letter.

### WIRE FRAUD

### DEFENDANT CHEVROLET OF CULVER CITY (CCC Auto LLC)

135.    On September 2, 2025, Chevrolet of Culver City sent a 28-page deal file

and asserted that it was the only loan contract on record, thereby reinforcing the

false narrative and obscuring the existence of multiple contracts.

136.    Subsequent review of the dealership's 28-page "deal file" revealed systemic

falsification and fabrication of key documents, including altered contractual terms,

unauthorized add-ons, inconsistent financial disclosures, and forged or pre-

populated signatures—all transmitted interstate via electronic systems operated by

Tekion, Origence, and General Motors.

137.    These falsified transmissions further entrenched the fraudulent narrative

across the enterprise's digital platforms, preventing timely discovery of the forged

contracts and enabling continued reporting of false obligations. As a direct

consequence, Plaintiff's credit profile, business funding capacity, and contractual

integrity were materially damaged, resulting in sustained economic and reputational harm traceable to the coordinated interstate communications.

## WIRE FRAUD

## DEFENDANT CHEVROLET OF CULVER CITY (CCC Auto LLC)

138. Defendant Chevrolet of Culver City (CCC Auto LLC), acting through its sales and finance personnel, willfully engaged in a scheme to defraud Plaintiff by transmitting and facilitating the electronic exchange of forged and falsified loan documents tied to the voided September 13, 2023, Retail Installment Sales Contract ("RISC").

139. On or about September 9, 2025, Defendant Chevrolet of Culver City, in concert with Golden 1 Credit Union, caused to be electronically transmitted a fraudulent membership application and altered account materials through interstate email systems and dealer-lender integration platforms managed by Origence and Tekion. These transmissions included a falsified 2011 membership form containing incorrect personal identifiers, a fabricated mother's maiden name, and an inaccurate driver's license number, all of which were used to maintain the appearance of a legitimate credit relationship.

140. The electronic transmission of this falsified documentation constituted a deliberate use of interstate wire communications to further the enterprise's scheme

to defraud. The communication omitted the material fact that the September 13,

2023, RISC had been voided and that the underlying account information was

derived from stolen personal identifiers.

141.   Plaintiff relied upon the honest services and fraud-prevention obligations of

Defendant Chevrolet of Culver City as a licensed automobile dealership and

franchisee of General Motors, expecting that all transmitted loan and membership

records would be accurate, truthful, and compliant with state and federal law.

Instead, the dealership's willful participation in transmitting falsified information

facilitated the continuation of the racketeering enterprise and the dissemination of

fraudulent credit data across state lines.

142.   Defendant Chevrolet of Culver City's conduct satisfies the elements of wire

fraud under 18 U.S.C. § 1343:

143.   (1) it engaged in a scheme to defraud.

144.   (2) the scheme involved material misstatements and omissions.

145.   (3) it used interstate wire communications in furtherance of that scheme; and

146.   (4) the fraudulent acts resulted in Plaintiff's loss of money, property, and

honest services through business-credit denials, reputational injury, and disruption

of lawful operations.

147.   These transmissions cemented the appearance of a valid financial

relationship and caused Plaintiff to suffer continuing harm, including the denial of

business credit, inability to secure funding for property acquisitions, and the

erosion of commercial credibility. The fraudulent data propagated through

interstate systems operated by Tekion and Origence directly prolonged the injury,

ensuring that the enterprise's deception continued to inflict financial and

reputational damage well after discovery of the voided contract.

148.

### Reporting and Failure to Investigate Identity Theft

149.   On September 22, 2025, Plaintiff mailed certified correspondence to each of

the Defendants Experian, TransUnion, Equifax, as well as Golden 1, providing

formal notice of identity theft associated with a fraudulent auto loan and an

unauthorized savings account opened in his name.

150.   Each mailing included three key documents: A Federal Trade Commission

(FTC) Identity Theft Report; A Los Angeles Police Department Identity Theft

Incident Report filed by Plaintiff; and A completed Golden 1 Credit Union Identity

Theft Affidavit obtained directly from Golden 1's official website.

151.   The documents were mailed to the following addresses: Experian

Information Solutions, Inc. PO Box 9701, Allen, Texas 75013, TransUnion LLC

PO Box 805, Woodlyn, Pennsylvania 19094-0805, Equifax Information Services,

LLC PO Box 740256, Atlanta, Georgia 30374-0256, and Golden 1 Credit Union PO Box 15966, Sacramento, California 95852-1966.

152.   Despite receiving the FTC report, police report, and signed Golden 1 affidavit, none of the defendants conducted a reasonable investigation as required under 15 U.S.C. § 1681s-2(b). Instead, each continued to publish and verify the fraudulent account information on Plaintiff's credit reports.

153.   Defendants' collective refusal to act upon these verified identity-theft notices perpetuated the fraudulent account's appearance of legitimacy and prolonged Plaintiff's financial harm. Their willful inaction caused continued credit denials, loss of business opportunities, and reputational injury, furthering the racketeering enterprise's objective of maintaining false debt data in interstate commerce.

**MAIL AND FRUAD FRAUD DEFENDANT TRANSUNION**

154.   Defendants TransUnion and Experian each knowingly participated in a scheme to defraud by concealing the material fact that the disputed Golden 1 auto-loan account was created through identity theft and based on a voided September 13, 2023, Retail Installment Sales Contract ("RISC").

155.   On or about September 30, 2025, Defendant TransUnion mailed a letter to Plaintiff at 1437 Hi Point Street, Apartment 6, Los Angeles, California 90035,

falsely stating that its "investigation" was complete and that no additional

documents were required. In reliance upon TransUnion's duty to provide honest

services and fraud prevention under the Fair Credit Reporting Act, Plaintiff

expected a good-faith investigation and correction of the record. Instead,

TransUnion internally altered its reporting system to mark the account as "verified

and modified," thereby republishing fraudulent data received from Defendant

Golden 1 Credit Union through interstate electronic transmissions.

156.   On or about October 2, 2025, Defendant Experian mailed similar

correspondence to the same address, confirming receipt of Plaintiff's dispute but

intentionally failing to process the attached identity-theft reports and supporting

documentation. Experian then updated its database to reflect the Golden 1 account

as "Loan Modified – Fixed Rate," transmitting and storing this data through

interstate digital networks linking its out-of-state servers with Golden 1's

Sacramento systems.

157.   Both Defendants knowingly omitted the material fact that the account

information originated from stolen personal identifiers and a voided loan contract.

These omissions rendered their statements misleading and were intended to

maintain the appearance of a lawful, verified debt to further the ongoing

racketeering scheme.

158.   Plaintiff reasonably relied on the Defendants' statutory obligations of honest service and fraud prevention, believing their representations reflected truthful, independent investigations. Instead, their actions perpetuated and concealed the enterprise's fraudulent conduct, causing continued injury to Plaintiff's credit, business operations, and reputation.

159.   The Defendants coordinated use of the U.S. Mail and interstate wire communications to deliver false assurances and publish fraudulent data constitutes predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

160.   These deceptive communications sustained the illusion of legitimacy surrounding the fraudulent account, directly leading to repeated credit denials, loss of financing, and diminished business credibility. By republishing the false data through their national reporting networks, TransUnion and Experian prolonged Plaintiff's economic injury and reinforced the continuity of the enterprise's racketeering activity.

## MAIL AND WIRE FRUAD DEFENDANT EQUIFAX

161.   On or about October 9, 2025, Defendant Equifax knowingly participated in the ongoing scheme to defraud by concealing the fact that the disputed Golden 1 auto-loan account was derived from stolen personal identifiers and a voided September 13, 2023, Retail Installment Sales Contract ("RISC").

162.   On that date, Defendant Equifax emailed Plaintiff from *no-reply@equifax.com* stating, "the details and comments on one of your credit accounts have changed." This electronic communication, transmitted via interstate wire, was intended to appear as a routine notice while concealing that the changes were based on fraudulent data supplied by Golden 1 Credit Union.

163.   Equifax internally logged these modifications in its consumer-reporting database and confirmed receipt of electronic data files transmitted from Golden 1's Sacramento servers through interstate digital networks to Equifax's out-of-state systems. The update falsely presented the account ending in *1801 as "Loan Modified – Fixed Rate," notwithstanding Plaintiff's verified identity-theft reports and documentation showing that no lawful modification or valid account existed.

164.   Plaintiff reasonably relied on Equifax's obligation to provide honest services and fraud prevention under the Fair Credit Reporting Act, expecting a good-faith investigation and correction of the record. Equifax's concealment of the fraudulent source and its continued publication of the data deprived Plaintiff of these honest services, furthering the racketeering enterprise's goal of legitimizing the void contract.

165.   Defendants Golden 1, Experian, TransUnion, and Equifax collectively acted in concert to maintain, validate, and disseminate false information across state lines. Each willfully refused to block or delete the disputed data, in direct violation

of FCRA § 605B (15 U.S.C. § 1681c-2) and California Civil Code § 1785.16.2,

demonstrating conscious disregard for Plaintiff's verified identity-theft reports.

166.    By knowingly transmitting and publishing false data through interstate

electronic commerce, omitting material facts regarding the theft and voided

contract, and falsely representing the account as legitimate, Defendant Equifax

committed predicate acts of wire fraud under 18 U.S.C. § 1343 and mail fraud

under 18 U.S.C. § 1341, furthering the continuity of the racketeering enterprise.

167.    Defendant Equifax's deceptive communication and continued publication of

the fraudulent account caused direct and foreseeable harm to Plaintiff by sustaining

the appearance of a valid loan obligation. As a result, Plaintiff suffered repeated

credit denials, diminished business funding capacity, and reputational injury within

financial and commercial markets. Through these willful acts, Defendants Equifax,

Experian, TransUnion, and Golden 1 collectively prolonged the fraudulent

enterprise's operation and the ongoing pattern of racketeering activity in interstate

commerce.

**Persons Who Directed the Affairs of the Enterprise (Predicate-Linked)**

168.    From September 13, 2023, through September 2025, Defendants Nevin

Baratian (Principal Dealer, Chevrolet of Culver City / Culver City Auto Mall LLC,

6101 W. Slauson Ave., Culver City, CA 90230), Loria Marble-Stallworth

(Supervisor, Loss Mitigation, The Golden 1 Credit Union, 8945 Cal Center Dr., Sacramento, CA 95826), Michael Cry (Centralized Complaints Analyst, The Golden 1 Credit Union, same address), and Beth Miller (Vice President, Member Care & Credit Reporting Oversight, The Golden 1 Credit Union, same address) knowingly used interstate mail and wire communications to conduct and conceal a pattern of fraudulent auto-loan activities through an association-in-fact enterprise comprising Origence, Inc. (CUDL), 18400 Von Karman Ave., Ste. 900, Irvine, CA 92612; Tekion, 5934 Gibraltar Dr., Ste. 201, Pleasanton, CA 94588; General Motors LLC, 300 Renaissance Center, Detroit, MI 48265; and affiliated entities, affecting Plaintiff Javeyon Hawthorne at 1437 Hi Point St., Apt. 6, Los Angeles, CA 90035. Predicates: 18 U.S.C. §§ 1341, 1343, 1344, 1028, 1546, 1951, 891–894, 1956, 1957, 2314–2315, 659.

169.   On September 13, 2023, at 6101 W. Slauson Ave., Culver City, CA 90230, Defendant Nevin Baratian directed dealership personnel to forge and submit Plaintiff's credit application via interstate wires through RouteOne and then through Tekion → Origence (CUDL), thereby transmitting falsified identifiers to out-of-state nodes for underwriting and funding. Predicates: wire fraud, 18 U.S.C. § 1343; identification/document fraud, 18 U.S.C. §§ 1028, 1546; interstate transport/receipt of converted property (personal identifiers and loan data), 18 U.S.C. §§ 2314–2315, 659.

170.   After The Golden 1 Credit Union rejected the same-day RISC, Defendant Baratian suppressed that original RISC to conceal the voided transaction. Predicates: mail/wire concealment, 18 U.S.C. §§ 1341, 1343.

171.   On September 15, 2023 (approximately 7:47 p.m. Pacific Time), Defendant Nevin Baratian caused a forged replacement RISC with altered TILA terms to be created and electronically transmitted from the dealership to The Golden 1 Credit Union (8945 Cal Center Dr., Sacramento, CA 95826) and Origence (Irvine, CA 92612) for funding and reporting. Predicates: mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; financial-institution fraud, 18 U.S.C. § 1344; identification/document fraud, 18 U.S.C. §§ 1028, 1546.

172.   On August 4, 2025 (approximately 5:18 p.m. Pacific Time), Defendant Loria Marble-Stallworth emailed Plaintiff at 1437 Hi Point St., Apt. 6, Los Angeles, CA 90035 a back-dated repossession/loan-modification packet and caused the same notice to be mailed to Plaintiff's prior address, 1201 S. Hope St., Apt. 3310, Los Angeles, CA 90015, despite knowledge the underlying RISC had been voided. Defendant Marble-Stallworth coordinated with Defendant Michael Cry to generate internal notes and account records masking The Golden 1 Credit Union's knowledge of the forgery and to circulate false Metro 2 updates to Experian (PO Box 9701, Allen, TX 75013), TransUnion (PO Box 805, Woodlyn, PA 19094-0805), and Equifax (PO Box 740256, Atlanta, GA 30374-0256) during January–

March 2025. Predicates: wire fraud, 18 U.S.C. § 1343; mail fraud, 18 U.S.C. §

1341; interference with commerce and extortionate leverage in collections, 18

U.S.C. §§ 1951, 891–894.

173.    On August 27, 2025, Defendant Michael Cry authored and mailed a letter

from The Golden 1 Credit Union, 8945 Cal Center Dr., Sacramento, CA 95826, to

Plaintiff at 1437 Hi Point St., Apt. 6, Los Angeles, CA 90035, falsely asserting the

loan was validated, fraud was not found, and a "signed contract" existed, and

representing that corrections had been sent to the credit bureaus though false data

remained. Predicates: mail fraud, 18 U.S.C. § 1341; related wire acts to publish

and republish via the CRAs, 18 U.S.C. § 1343.

174.    From September 2023 through October 2025, Defendant Beth Miller, as

Vice President, Member Care & Credit Reporting Oversight, The Golden 1 Credit

Union, acted as the executive approver and continuity link by authorizing (and

refusing to halt) continued Metro 2 transmissions to Experian (Texas), TransUnion

(Pennsylvania/Illinois systems), and Equifax (Georgia) after notice of forged

documents and identity-theft submissions. Predicates: wire fraud, 18 U.S.C. §

1343; money laundering/monetary transactions in proceeds, 18 U.S.C. §§ 1956,

1957, through acceptance and processing of payments exceeding $10,000 tied to

the fabricated loan.

175.   Between Janurary and August 2025, Defendant The Golden 1 Credit Union, through Defendants Beth Miller, Michael Cry, Loria Marble-Stallworth, and Amber Crosby (all at 8945 Cal Center Dr., Sacramento, CA 95826), approved and directed false Metro 2 updates and emailed "loan modification approvals" to Plaintiff at 1437 Hi Point St., Apt. 6, Los Angeles, CA 90035, to perpetuate the appearance of an enforceable debt. Predicates: wire fraud, 18 U.S.C. § 1343; extortionate credit transactions, 18 U.S.C. §§ 891–894; Hobbs Act interference with commerce, 18 U.S.C. § 1951.

176.   Despite receiving Plaintiff's identity-theft packets mailed September 22, 2025, to defendants Experian, Equifax, TransUnion and Golden 1 (addresses above), defendant Beth Miller exercised managerial authority to continue transmissions and collections, with knowledge of the forged membership application and altered RISCs. Predicates: wire fraud, 18 U.S.C. § 1343; mail fraud, 18 U.S.C. § 1341; financial-institution fraud, 18 U.S.C. § 1344.

177.   The combined conduct of culpable persons are through Defendants Beth Miller, Loria Marble-Stallworth, Michael Cry, and Amber Crosby) and Nevin Baratian satisfies the Reves v. Ernst & Young, 507 U.S. 170 (1993), "operation or management" test, as each directed core enterprise functions—loan creation, document routing via defendants Tekion (Pleasanton, CA) and Origence (Irvine, CA), funding and servicing at The Golden 1 Credit Union (Sacramento, CA), and

data publication to defendants Experian, TransUnion, and Equifax—and used mail

and wire to execute and conceal those acts. Predicates: 18 U.S.C. §§ 1341, 1343,

1344, 1028, 1546, 1951, 891–894, 1956, 1957, 2314–2315, 659.

178.   These coordinated actions formed a continuous pattern of racketeering

activity from September 2023 through September 2025, consisting of multiple

related predicate acts—mail fraud, wire fraud, financial-institution fraud,

identification/document fraud, extortionate credit practices/interference with

commerce, money laundering/monetary transactions in unlawful proceeds, and

interstate transport/receipt of converted property—sharing the same purposes,

results, participants, victims, and methods: concealing forged contracts and a

fabricated credit-union membership; maintaining false credit data; extracting funds

and late fees; and leveraging interstate systems (Tekion, Origence, and the national

credit bureaus) to affect commerce. Accordingly, each Defendant willfully

participated in the operation and management of the enterprise in violation of 18

U.S.C. § 1962(c).

179.   As a direct and foreseeable result of this two-year pattern of coordinated

racketeering activity, Plaintiff suffered substantial and continuing injury to

business and property, including loss of creditworthiness, repeated denials of

financing, forfeiture of business expansion opportunities, and reputational harm

within financial and commercial markets. The Defendants' ongoing concealment

of forged contracts, falsified loan data, and identity-theft records through interstate

mail and wire transmissions demonstrates both the closed-ended continuity of past

conduct and the open-ended threat of continued criminal activity affecting

interstate commerce, satisfying the continuity requirement under 18 U.S.C. §

1961(5).

## Corporate Continuity, Alter Ego, and Successor Liability

180.    On August 12, 2019, Defendant CCC Auto LLC was registered as a foreign

limited-liability company in California, formed under Delaware law on August 2,

2019. Its principal executive office was 2415 E. Camelback Rd., Suite 700,

Phoenix, AZ 85016. The California filing listed Monika L. Brohamer as authorized

signatory and Northwest Registered Agent, Inc., 2108 N Street, Suite N,

Sacramento, CA 95816, as agent for service of process.

181.    On May 1, 2025, the California Franchise Tax Board forfeited CCC Auto

LLC's corporate powers for non-payment of tax obligations. Its Secretary of State

status changed to "Forfeited – FTB," terminating legal authority to operate in

California. Despite this forfeiture, business operations at 6101 W. Slauson Avenue,

Culver City, CA 90230 continued without interruption under the trade name

Chevrolet of Culver City. The continued use of the forfeited entity to transmit

contracts and receive funds constituted wire fraud under 18 U.S.C. § 1343 and
money laundering under 18 U.S.C. §§ 1956–1957.

182.    At the time of forfeiture, Defendant Nevin Baratian served as Principal
Dealer and manager, directing daily operations. On September 15, 2025, Jordan
Golshan, acting under Baratian's authority, filed a Statement of Information with
the California Secretary of State falsely indicating that CCC Auto LLC remained
active, concealing its forfeited status. This false filing was a misrepresentation of
material fact transmitted through state electronic systems to maintain the
appearance of legitimacy, a predicate act of wire fraud under 18 U.S.C. § 1343.

183.    On November 22, 2024—while CCC Auto LLC was delinquent and under
audit review—Defendant Culver City Auto Mall LLC was formed in Delaware and
immediately registered in California using the same registered agent (Northwest
Registered Agent, Inc.) and address (2108 N Street, Suite N, Sacramento, CA
95816). The new LLC listed Defendant Nevin Baratian as its managing member
and agent for service of process. This formation was part of an ongoing scheme to
transfer liabilities while retaining fraud-derived assets, a money-laundering
predicate under 18 U.S.C. §§ 1956–1957.

184.    Following its formation, Defendant Culver City Auto Mall LLC adopted the
same business name, location, employees, and digital infrastructure used by CCC
Auto LLC. The Statement of Information filed January 27, 2025, identified

Baratian as manager and agent, confirming continuity of control. This use of a new entity to continue the same dealership's fraudulent loan submissions through Origence and Tekion constitutes wire fraud under 18 U.S.C. § 1343 and financial-institution fraud under 18 U.S.C. § 1344.

185.   Email records from August through September 2025 show Jordan Golshan and staff using the culvercitychevrolet.com domain to manage legacy contracts originated under CCC Auto LLC, including Plaintiff's September 13, 2023, RISC. These emails demonstrate the entities operated as a single enterprise in interstate commerce, sharing servers and payment systems that moved fraudulent documents and funds across state lines in violation of 18 U.S.C. §§ 1343, 2314, and 2315.

186.   The formation of Culver City Auto Mall LLC immediately after CCC Auto LLC's tax forfeiture was a deliberate restructuring maneuver to evade liabilities arising from the forged loan contracts and associated fraudulent activities. Such reorganization served to conceal the origin of unlawful proceeds and constitutes money laundering and concealment of proceeds under 18 U.S.C. §§ 1956–1957.

187.   Both entities shared the same owners, managers, addresses, registered agent, and trade name. Defendant Nevin Baratian maintained continuous control over dealership operations before and after forfeiture, using the new LLC to continue vehicle sales and loan submissions through the Origence–Tekion platform. These acts reflect ongoing wire fraud (18 U.S.C. § 1343) and theft from interstate

shipment (18 U.S.C. § 659) through misappropriation of loan funds and customer

data.

188.   Commingling of Assets and Functions. Customer records, financial systems,

email domains, and contracts were transferred directly from CCC Auto LLC to

Culver City Auto Mall LLC without corporate distinction. Both entities used the

same merchant accounts and banking channels to receive loan funds and payments

derived from fraudulent transactions. The movement of these funds constitutes

monetary transactions in property derived from unlawful activity under 18 U.S.C.

§ 1957.

### Use of Successor to Perpetuate Fraud

189.   Culver City Auto Mall LLC continued managing Plaintiff's loan records and

interacted with Defendant Golden 1 through the same defendants Origence

platform to re-transmit altered contracts and false data after CCC Auto LLC had

been forfeited. These acts constitute ongoing wire fraud under 18 U.S.C. § 1343

and demonstrate the enterprise's continuity beyond the original corporate entity.

### Inequitable Result if Treated Separately

190.   Treating CCC Auto LLC and Culver City Auto Mall LLC as distinct would

permit Defendant Nevin Baratian and affiliates to evade liability for fraudulent acts

performed under CCC Auto LLC and concealed through its successor. The facts

show unity of interest, continuity of operations, and intent to avoid accountability,

satisfying the alter-ego criteria for corporate veil piercing.

191.    Accordingly, Defendant Culver City Auto Mall LLC is the alter ego and

mere continuation of Defendant CCC Auto LLC. Both entities, under Defendant

Baratian control, operated as a single ongoing enterprise used to facilitate and

conceal racketeering activities. Corporate veil piercing is warranted to hold

Defendants Culver City Auto Mall LLC, CCC Auto LLC, and Nevin Baratian

jointly liable for all frauds and predicate acts committed under the CCC Auto LLC

entity.

### III. Enterprise Structure and Interstate Commerce Impact

### (18 U.S.C. § 1962(c); 18 U.S.C. § 1961(4))

192.    The racketeering enterprise operated as a coordinated, technology-driven

network that linked automobile dealerships, credit unions, software providers, and

credit-reporting agencies across multiple states.  Its commercial activities—loan

origination, document transmission, and data furnishing—regularly crossed state

lines and used instrumentalities of interstate commerce, including electronic

networks, mail systems, and national credit-reporting platforms.

193.    Defendant Golden 1 conducted financing and data-reporting functions from

Sacramento, California, transmitting electronic loan files and Metro 2 credit data

through the defendants Origence and Tekion platforms hosted in California and other states. These transmissions were routed through national servers used by defendants Experian (Texas), TransUnion (Illinois), and Equifax (Georgia).

194.    Defendant Culver City Auto Mall LLC, operating as Chevrolet of Culver City, initiated the fraudulent vehicle sale and electronically submitted credit applications to lenders via the Origence CUDL and Tekion Automotive Retail Cloud systems. Each transmission contained Plaintiff's personal identifiers and financial data that moved through interstate networks to multiple jurisdictions, including California, Arizona, and Georgia.

195.    Defendants Origence, Tekion, GM, Golden 1, Chevrolet of Culver City, California Credit Union League, Experian, and Equifax maintained interstate data-sharing agreements that connected thousands of dealerships, credit unions, and consumer reporting agencies nationwide.

196.    Through these integrations, the forged Retail Installment Sales Contract (RISC), falsified loan data, and credit-reporting updates were distributed across state lines, giving the enterprise an interstate commercial footprint and financial benefit from every fraudulent loan transmitted through its system.

197.    The enterprise's revenue derived from interstate transactions: vehicle sales funded by out-of-state lenders, loan-servicing fees, data-reporting contracts, and reinvested proceeds that expanded platform infrastructure. Each defendant, by

engaging in these activities, used the mails and wires in interstate commerce to execute or conceal the fraudulent scheme, thereby satisfying the jurisdictional element of 18 U.S.C. § 1962(c).

198.    The integrated operations of Defendant Golden 1, Culver City Auto Mall LLC, Origence, Tekion, and General Motors formed an association-in-fact enterprise whose affairs were conducted through continuous mail- and wire-fraud predicate acts.

199.    Their unified systems shared financial objectives, and ongoing transmission of falsified data across state lines establish both interstate nexus and enterprise continuity under 18 U.S.C. § 1961(4).

200.    The deliberate forfeiture, reincorporation, and seamless continuation of operations under a new entity name enabled the enterprise to obscure accountability, maintain access to interstate dealer-lender systems, and continue transmitting falsified contracts tied to Plaintiff's identity. This calculated restructuring preserved the flow of unlawful proceeds and prolonged the racketeering enterprise's impact, directly causing Plaintiff continued financial loss, reputational damage, and obstruction of redress.

## Business Injuries Caused by Defendants

## Racketeering and False Credit Reporting

201.    Pursuant to 18 U.S.C. § 1964(c), any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 may bring a civil action in the appropriate United States District Court and recover threefold the damages sustained, along with the costs of the suit and a reasonable attorney's fee.

202.    Plaintiff, as set forth above, was directly and proximately injured in his business and property by reason of Defendants' violations of 18 U.S.C. §§ 1962(a)–(d). These violations include the creation and circulation of falsified loan contracts, the electronic transmission of forged and altered records, and the furnishing of false consumer data through interstate systems, each constituting predicate acts under 18 U.S.C. §§ 1341, 1343, 1344, 2314, and 2315.

203.    Defendants' collective pattern of racketeering activity destroyed Plaintiff's business creditworthiness and financial operations, leading to the collapse of multiple revenue-generating properties and the loss of essential credit relationships. These harms represent concrete financial injury and damage to property within the meaning of § 1964(c).

204.    Plaintiff's injuries were not derivative or speculative, but the direct and foreseeable result of Defendants' unlawful conduct in maintaining and operating

the racketeering enterprise. Plaintiff's losses include but are not limited to: (a) the

permanent closure of fifteen Airbnb properties; (b) repossession of a business

vehicle; (c) loss of over $3 million in business revenue; and (d) long-term

destruction of business credit, reputation, and access to commercial financing.

205.    Accordingly, Plaintiff is entitled to recover threefold the damages sustained

under § 1964(c), together with the costs of this action and any other relief deemed

just and proper by this Court.

206.    The statutory exception excluding securities-related fraud does not apply to

this action, as no securities transactions were involved. None of the alleged

conduct relates to the purchase or sale of securities, and no Defendant has been

criminally convicted in connection with securities fraud.

207.    The scope and persistence of Defendants' conduct demonstrate that the

enterprise operated as an integrated system of interstate fraud whose effects

reached beyond California, impacting financial institutions, reporting agencies, and

interstate commerce. The resulting economic destruction to Plaintiff's business and

property is precisely the type of injury Congress intended § 1964(c) to redress,

warranting treble damages and full equitable relief to restore Plaintiff to the

financial position he would have occupied but for Defendants' racketeering acts

## Personal Injuries and Emotional Harm

## Resulting from Defendants' Violations of the FCRA

208.    The willful and negligent violations of the Fair Credit Reporting Act ("FCRA") by Defendants directly caused Plaintiff severe emotional distress, mental anguish, and financial strain. Defendants' repeated publication and re-publication of false credit information, despite Plaintiff's written disputes and identity theft reports, created ongoing harm that reached far beyond the loss of credit opportunities.

209.    As a direct and proximate result of Defendants' inaccurate and uncorrected reporting, Plaintiff suffered repeated credit denials, loss of financial stability, and reputational harm. These denials included refusals for a basic credit card, an automobile loan, and a personal line of credit, each preventing Plaintiff from maintaining normal financial operations. The ongoing publication of false information caused continuous anxiety, emotional distress, and a substantial disruption to Plaintiff's financial growth.

210.    The stress of years-long disputes with consumer reporting agencies and furnishers of information, coupled with the failure to conduct lawful reinvestigations under 15 U.S.C. §§ 1681i and 1681s-2(b), caused Plaintiff to experience clinical depression, panic episodes, and sleep disorders. Plaintiff

required prescription medications and therapy, incurring over $1,000 in treatment expenses.

211.  Plaintiff's emotional injuries were compounded by the daily burden of responding to inaccurate reports, contacting creditors, and managing investigations that should have been resolved under the FCRA's statutory timelines. This repeated exposure to unlawful conduct perpetuated ongoing emotional harm and loss of trust in the credit system.

212.  The prolonged uncertainty and financial damage disrupted Plaintiff's home life and relationships. Family interactions became dominated by the stress of correcting false reports, leading to marital strain, extended separations, and emotional distance.

213.  Plaintiff lost the ability to rest, focus, or plan for the future due to the continued dissemination of false credit data. The Defendants' willful disregard for accuracy and reinvestigation requirements under the FCRA caused measurable harm to Plaintiff's quality of life and mental well-being.

214.  Defendants' conduct did not merely violate statutory rights; it invaded Plaintiff's peace of mind and sense of security. The harm was personal, ongoing, and foreseeable arising directly from the Defendants' unlawful handling and publication of Plaintiff's personal and credit information.

215.   As a result of Defendants' willful and negligent violations of the Fair Credit

Reporting Act, Plaintiff is entitled to recover actual, statutory, and punitive

damages under 15 U.S.C. §§ 1681n and 1681o, together with reasonable costs and

fees. The breadth and persistence of Defendants' misconduct—despite repeated

notice and verified identity-theft documentation—demonstrate a reckless disregard

for Plaintiff's rights and warrant enhanced damages to deter continued systemic

violations.

## FIRST CAUSE OF ACTION Violation of 18 U.S.C. § 1962(a)

### Against Defendant Golden 1

216.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs

as though fully set forth herein. Defendant Golden 1 Credit Union ("Golden

One") is a "person" within the meaning of 18 U.S.C. § 1961(3).

217.   On or about September 13, 2023, Defendant Golden One knowingly created

and funded a fraudulent savings account in Plaintiff's name with a $1 deposit,

without authorization or consent. This unauthorized account served as the initial

conduit through which Golden One generated and laundered proceeds derived

from a pattern of racketeering activity that included wire fraud and identity

fraud, in violation of 18 U.S.C. §§ 1343 and 1028.

218.   On September 18, 2023, using that same unauthorized account and Plaintiff's stolen identifiers, Defendant Golden One originated a $90,378.06 automobile loan in Plaintiff's name through interstate systems operated by Tekion and Origence. The transaction was executed through interstate electronic communications and financial networks, satisfying the elements of wire fraud under 18 U.S.C. § 1343.

219.   The fraudulent origination and subsequent electronic transmission of loan proceeds constituted the use and investment of racketeering income in a new financial instrument and enterprise. Defendant Golden One knowingly reinvested funds obtained through unlawful means to expand and operate a continuing scheme affecting interstate commerce.

220.   These funds were subsequently transferred, routed, and commingled through Golden One's interstate banking channels, constituting money laundering in violation of 18 U.S.C. §§ 1956 and 1957. By using racketeering proceeds to finance, acquire, and sustain accounts within its interstate financial network, Defendant Golden One concealed the origin and ownership of the unlawful income while furthering the ongoing racketeering enterprise.

221.   Through this reinvestment, Defendant Golden One expanded and perpetuated the enterprise by issuing unlawful credit, sustaining falsified accounts, and transmitting false consumer-reporting data nationwide. These acts

enhanced the enterprise's commercial reach and generated unlawful debt and

interest income projected through at least 2032.

222.   As a direct and proximate result of this conduct, Plaintiff was burdened with

a fabricated debt, false credit data were published and republished, and Plaintiff

lost access to legitimate financing exceeding $3 million. Plaintiff also suffered

reputational damage, emotional distress, and continuing financial injury.

223.   By reason of the foregoing, Defendant Golden One violated 18 U.S.C. §

1962(a) through predicate acts of wire fraud and money laundering, and

Plaintiff is entitled to treble damages, costs of suit, and such further relief as the

Court deems just and proper under 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION Violation of 18 U.S.C. § 1962(b)

## All Defendants

224.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

As a direct and proximate result of Defendants' unlawful acquisition and

maintenance of control over the enterprise, Plaintiff's financial and business affairs

were subjugated to the enterprise's false data and fabricated contracts. Defendants'

continued control over the flow of information particularly through Golden 1's

false credit transmissions and the credit bureaus' republication of those falsities—

deprived Plaintiff of access to legitimate credit markets, business funding, and vehicle ownership rights.

225. Defendants Golden 1, Experian, TransUnion, Equifax, Culver City Auto Mall LLC (successor to CCC Auto LLC, d/b/a Chevrolet of Culver City), and Nevin Baratian are each "persons" within the meaning of 18 U.S.C. § 1961(3).

226. Through coordinated acts of mail, wire, and identity fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1028, these Defendants acquired and maintained, directly and indirectly, an interest in and control of an enterprise composed of General Motors Company, Tekion, and Origence, Inc. Experian, TransUnion, and Equifax exercised control by publishing, transmitting, and maintaining fraudulent credit tradelines and loan data connected to the unauthorized contract originated by Defendants Chevrolet of Culver City and Golden 1.

227. Defendant Golden 1 knowingly transmitted false information to the credit bureaus in furtherance of the scheme to conceal the voided contract and to create the appearance of a valid, enforceable debt.

228. Defendant Nevin Baratian and Chevrolet of Culver City furthered the scheme by concealing the voided contract, transmitting falsified Retail Installment Sales Contracts across state lines, and using Plaintiff's stolen identification to maintain control of the enterprise's proceeds.

229. Defendant Beth Miller, Vice President of Credit Reporting at Golden 1,
oversaw and approved the false data transmitted to the bureaus, maintaining the
enterprise's control over Plaintiff's credit profile.

230. Defendant Loria Marble-Stallworth, acting in a senior managerial capacity,
signed and approved a fraudulent "loss-mitigation" loan modification to disguise
the bank's unlawful activity and sustain its financial control over the fraudulent
account.

231. Defendant Michael Cry participated by authorizing and mailing misleading
correspondence to Plaintiff regarding the loan's authenticity, reinforcing the
enterprise's hold over the fraudulent obligation. Through these collective acts,
Defendants acquired and maintained an interest in and control of the enterprise to
expand its reach, conceal misconduct, and extract unlawful financial gains at
Plaintiff's expense.

232.  By reason of the foregoing, Plaintiff suffered quantifiable business losses,
denial of financing, and damage to professional credibility, all flowing from
Defendants' acquisition and maintenance of the enterprise's control through
fraudulent means, in violation of 18 U.S.C. § 1962(b).

# THIRD CAUSE OF ACTION

## Violation of 18 U.S.C. § 1962(c)- Defendants Beth Miller,

## Michael Cry, Loria Marble-Stallworth, Nevin Baratian

233.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants Beth Miller, Loria Marble-Stallworth, Michael Cry, and Nevin

Baratian are "persons" within the meaning of 18 U.S.C. § 1961(3).

234.   The enterprise through which they acted consists of interconnected entities

engaged in interstate commerce, including Defendants Origence, Tekion, GM

and the national credit bureaus Experian, TransUnion, and Equifax.

235.   Each Defendant participated, directly or indirectly, in conducting the

enterprise's affairs through a pattern of racketeering activity in violation of 18

U.S.C. § 1962(c). From September 2023 through August 2025, these

Defendants engaged in repeated predicate acts including mail fraud, wire fraud,

bank fraud, identity fraud, document fraud, extortion, and monetary transactions

in criminally derived property.

236.   Defendant Nevin Baratian, acting as Dealer principle and agent of

Defendant Chevrolet of Culver City, knowingly generated and transmitted a

back-dated five-page Retail Installment Sales Contract on August 29, 2025, and

September 2, 2025, containing forged initials and omitted disclosures.

Defendant Beth Miller, Defendant Loria Marble-Stallworth, and Defendant

Michael Cry coordinated to continue the deception by transmitting additional

falsified documents, issuing false collection demands, and communicating

misleading information regarding the alleged debt.

237.   Their actions, executed through enterprise communication networks and

mail systems, maintained the appearance of legitimacy and sustained the

scheme's profitability.

238.   The continuous flow of proceeds from these acts was reinvested into the

enterprise to finance technological platforms, credit-reporting interfaces, and

further dissemination of false data, demonstrating both closed-ended and open-

ended continuity. By reason of this conduct, Defendants Beth Miller, Loria

Marble-Stallworth, Michael Cry, and Nevin Baratian conducted and

participated in the affairs of the enterprise through a pattern of racketeering

activity in violation of 18 U.S.C. § 1962(c).

## FOURTH CAUSE OF ACTION

### Violation of 18 U.S.C. § 1962(d)

### Conspiracy to Violate RICO Against All Defendants

239.   Plaintiff realleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

240.   Defendants The Defendant  Golden 1, Origence,  Tekion, General Motors Company, Culver City Auto Mall LLC (successor to CCC Auto LLC, d/b/a Chevrolet of Culver City), Experian, Equifax, TransUnion, and individual defendants Beth Miller, Loria Marble-Stallworth, Michael Cry, and Nevin Baratian knowingly and willfully conspired with one another to conduct and participate, directly and indirectly, in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

241.   Each defendant entered into an agreement—express or implied—to further the unlawful objectives of the enterprise.

242.   The common purpose was to obtain money and property through the creation, circulation, and concealment of fraudulent financial transactions tied to an unauthorized vehicle purchase and loan in Plaintiff's name, and to use interstate communications to sustain the false appearance of legitimacy.

243.   Defendant Golden 1 acted as the financial engine of the conspiracy. On September 13, 2023, it opened a fraudulent savings account in Plaintiff's name and funded it with $1 without authorization.

244.   Days later, on September 18, 2023, Golden 1 used the proceeds and Plaintiff's stolen information to originate a fraudulent auto loan for $90,378.06, creating a recurring monthly payment obligation of $1,582.

245.   This unauthorized loan became the centerpiece of the scheme, producing ongoing collections, late fees, and false reporting that benefited the other defendants Origence and Tekion built and maintained the digital infrastructure that transmitted Plaintiff's stolen personal and financial data from the dealership to defendant Golden 1, enabling the fraudulent account origination and electronic fund transfers across state lines.

246.   Defendant GM supplied the dealership with the vehicles forming the foundation of the enterprise's commercial activity, providing inventory, franchise rights, and financing programs that tied the manufacturer to the dealer's fraudulent sale.

247.   Defendant GM's investment in Tekion and Origence connected its manufacturing and technology arms with the lending pipeline that delivered the fraudulent transaction.

248.   Defendant Culver City Auto Mall LLC (successor to CCC Auto LLC d/b/a Chevrolet of Culver City) served as the operational front of the enterprise. Acting through its agents including Sales Manager David Albanez and Finance Manager Jose Amorino it falsified Plaintiff's credit application, misrepresented his identification, and transmitted the data through Tekion's platform to Origence and ultimately to Golden 1.

249.   Defendants Experian, Equifax, and TransUnion knowingly received,

published, and maintained false tradelines reporting the fraudulent $90,379 loan

and its recurring $1,582 payment, giving the scheme legitimacy in national

credit markets and prolonging Plaintiff's financial harm.

The individual defendants furthered the conspiracy through distinct overt acts:

250.   Defendant Beth Miller, as Vice President of Credit Reporting at Golden 1,

mailed deceptive letters on August 18, 2025, concealing the fraudulent loan's

origin and discouraging discovery.

251.   Defendant Loria Marble-Stallworth, in Golden 1's loss-mitigation

department, executed a fraudulent loan-modification document to extend and

disguise the scheme.

252.   Defendant Michael Cry directed internal communications falsely assuring

Plaintiff that the account was valid and his disputes were resolved.

253.   Defendant Nevin Baratian, successor to the dealership's forfeited entity,

transmitted falsified Retail Installment Sales Contracts via electronic

communication in August and September 2025 to maintain the illusion of a

legitimate obligation.

254.   Each defendant knew of the unlawful objectives and continued to participate

for shared financial benefit.

255.   Their coordinated conduct from 2023 through 2025 shows closed-ended continuity, and their ongoing reporting and data transmissions establish open-ended continuity, constituting a single ongoing conspiracy under 18 U.S.C. § 1962(d).

256.   As a direct and proximate result, Plaintiff suffered substantial business financial losses, reputational harm, emotional distress, and business injuries due to false credit reporting, fraudulent loan enforcement, and recurring unlawful fees of $1,582 per month derived from the fraudulent auto loan.

# FIFTH CAUSE OF ACTION

## Truth in Lending Act (TILA), 15 U.S.C. §§ 1638, 1640

## Against: Defendant Golden 1, Chevrolet of Culver City

257.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein TILA requires accurate disclosure of the amount financed, finance charge, annual percentage rate, total of payments, and number/timing of installments in retail installment contracts.

258.   On September 13, 2023, Plaintiff executed a RISC disclosing a 7.84% APR, $24,670.71 finance charge, and first payment due December 12, 2023. Golden 1 and the dealership later issued multiple conflicting RISCs (5-, 6-, 10-,

and 28-page versions) with inconsistent first-payment dates and forged

signatures and admitted dealership error.

259.   These conflicting and inaccurate disclosures violated TILA, entitling

Plaintiff to statutory and actual damages under §1640.

## SIXTH CAUSE OF ACTION

### California Consumer Protection Statutes

### Against: Defendant Golden 1, Chevrolet of Culver City

260.   Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein. Defendants engaged in unlawful,

unfair, and fraudulent business practices, including but not limited to furnishing

false credit information, concealing material loan terms, and issuing conflicting

Retail Installment Sales Contracts. These acts violated California's Unfair

Competition Law and caused Plaintiff economic loss, lowered creditworthiness,

and interference with business opportunities.

## SEVENTH CAUSE OF ACTION

## Consumer Credit Reporting Agencies Act (CCRAA, Civ. Code §1785.25)

## (Defendants Golden 1, Experian, Equifax and Transunion)

261.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein. Defendants willfully and negligently furnished inaccurate information to consumer reporting agencies, despite having reason to know the information was false. This conduct violated the CCRAA and directly caused Plaintiff derogatory credit reports, repeated credit denials, reputational injury, and financial loss.

## EIGHT CAUSE OF ACTION

## Rosenthal FDCPA (Civ. Code §1788) — (Defendant Golden 1)

262.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein. Improper collection threats Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein. In attempting to collect alleged debts, Defendants employed false, deceptive, and abusive tactics, including threats of repossession and coercive payment demands. Such conduct violates the Rosenthal FDCPA and caused Plaintiff emotional distress, financial pressure, and statutory injury.

## NINTH CAUSE OF ACTION

## Consumer Legal Remedies Act (CLRA, Civ. Code §1750 et seq.)

## ALL DEFENDANTS

263.   Plaintiff incorporates by reference all the above paragraphs of this
Complaint as though fully stated herein. Defendants used unfair and deceptive
acts and practices in connection with the drafting, presentation, and
enforcement of loan contracts.

264.   Specifically, Defendants included hidden or misleading terms and concealed
the true nature of financing obligations, violating the CLRA and causing
Plaintiff financial harm and the loss of statutory consumer protections.

## TENTH CAUSE OF ACTION

## Automobile Sales Finance Act (ASFA, Civ. Code §§2981–2984.4)

## (DEFENDANT CULVER CITY CHEVERLOT)

265.   Plaintiff incorporates by reference all of the above paragraphs of this
Complaint as though fully stated herein. Defendant violated the ASFA by
issuing multiple conflicting Retail Installment Sales Contracts, failing to
properly disclose financing terms, and attempting to enforce unlawful
obligations.

266.   These violations subjected Plaintiff to uncertainty, wrongful collection

efforts, and financial damages in contravention of statutory protections. Each

statutory violation provides an independent basis for restitution, damages, or

injunctive relief under California law.

## ELEVENTH CAUSE OF ACTION

### Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.):

### (Defendants Golden 1, Experian, Equifax and Transunion)

267.   Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein. Actual damages for financial losses,

credit denials, and emotional distress. Statutory damages up to $1,000 per

violation. Punitive damages for willful and reckless disregard of Plaintiff's

rights. Injunctive relief requiring permanent deletion of fraudulent tradelines

and procedures ensuring future accuracy.

## TWELFTH CAUSE OF ACTION

### Relief Under California's Unfair Competition Law

### (Cal. Bus. & Prof. Code § 17200 et seq.): ALL DEFEDNATS

268.   Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein Permanent injunctive relief prohibiting

unlawful and fraudulent business practices. Restitution of all funds unlawfully

obtained, including improper fees and coerced payments. Equitable relief necessary to restore Plaintiff's financial position and prevent unjust enrichment.

269.   Plaintiff suffered injury in fact and loss of money or property as a result.

## THIRTHEENTH CAUSE OF ACTION

### (Violation of the Fair Debt Collection

### Practices Act – 15 U.S.C. §§ 1692d, 1692e, 1692g) defendant Golden 1

270.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. To the extent The Defendant Golden 1 or its agents acted as "debt collectors," they violated the FDCPA by: misrepresenting the character, amount, and legal status of the alleged debt, threatening to report, and reporting, false credit information; and failing to cease collection and validate the debt after receiving notice of dispute. Such actions caused Plaintiff anxiety, reputational damage, and denial of credit opportunities. Plaintiff statutory, actual, and punitive damages pursuant to 15 U.S.C. §§ 1692k(a)(1)– (2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **JAVEYON HAWTHORNE**, respectfully requests:

271.   This Court enter judgment in his favor and against all Defendants, jointly

and severally, and grant the following relief:

272.   Relief Under the Racketeer Influenced and Corrupt Organizations Act (18

U.S.C. §§ 1961–1968) , **Treble damages** pursuant to 18 U.S.C. § 1964(c).

273.   Actual damages for injury to business, property, and reputation, including

but not limited to: Loss of business operations and contracts valued in excess of

$3,000,000.

274.   Denial of credit, financing, and lease opportunities, Repossession of

Plaintiff's business vehicle. Lost vendor relationships and clientele.

275.   **Declaratory relief** declaring that Defendants violated 18 U.S.C. §§

1962(a)–(d).

276.   Equitable and injunctive relief, enjoining Defendants from: Engaging in

further racketeering acts. Enforcing or collecting upon the fraudulent loan or

related accounts. Disseminating or maintaining false credit information through

any credit-reporting system.

277.   **Relief Under the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)**

Actual damages for financial loss, credit denials, and emotional distress.

Statutory damages of up to $1,000 per violation. Punitive damages for willful,

reckless, and malicious disregard of Plaintiff's rights. Injunctive relief requiring

permanent deletion of fraudulent tradelines, and implementation of procedures

to ensure future reporting accuracy.

278.  **III. Relief Under California State Law,** California Unfair Competition

Law (Bus. & Prof. Code § 17200 et seq.):

279.   Permanent injunction prohibiting Defendants' unlawful, unfair, and

fraudulent business practices. Restitution of all funds obtained through false,

deceptive, or coercive means; Disgorgement of profits unjustly earned through

the fraudulent loan scheme.

280.  **California Consumer Credit Reporting Agencies Act (Civ. Code §**

**1785.25 et seq.):** Statutory, actual, and punitive damages; Injunctive relief

requiring deletion and correction of inaccurate information; Attorneys' fees and

costs under § 1785.31(d).

**California Rosenthal Fair Debt Collection Practices Act (Civ. Code § 1788**

**et seq.):** Statutory and actual damages; Injunctive relief to cease deceptive or

coercive collection practices.

281.  **California Consumer Legal Remedies Act (Civ. Code § 1750 et seq.) and**

**Automobile Sales Finance Act (Civ. Code §§ 2981–2984.4):** Actual and

statutory damages for misrepresentation and concealment of loan terms.

Restitution and rescission of unlawful contracts.

282.  **IV. Additional Relief** Pre-judgment and post-judgment interest as permitted by law. Costs of suit and reasonable compensation for Plaintiff's extraordinary pro se efforts, reflecting over 1,300 hours of legal research, drafting, and evidence compilation. Such other and further relief as this Court deems just, proper, and equitable in the interests of justice.

### Demand for Jury Trial

283.  Plaintiff hereby requests a jury trial on all issues raised in this complaint.

**Dated:** October 17, 2025

By: Javeyon Hawthorne

Plaintiff in Pro Per